**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| **TOMMY WILLIS** | **CASE NO. 5:24-CV-00573** |
| **VERSUS** | **JUDGE EDWARDS** |
| **TIM HUCK ET AL** | **MAGISTRATE JUDGE HORNSBY** |

---

**MEMORANDUM RULING AND ORDER**

Before the Court is a Motion to Dismiss filed by defendants Tim Huck and ALB Ventures, LLC.[1] Plaintiff Tommy Willis ("Plaintiff") opposes the motion.[2] The defendants replied.[3]

After careful review of the parties' memoranda and the applicable law, the present Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

### a. Procedural Background

Plaintiff filed suit in this Court on April 30, 2024, asserting a defamation claim and an intentional infliction of emotional distress ("IIED") claim against defendants, Tim Huck ("Huck") and Club Phoenix 2.0 ("Phoenix").[4] Plaintiff filed an amended complaint ("First Amended Complaint") on May 10, 2024, recasting the same claims against the same defendants.[5] On July 19, 2024, defendants Huck and Phoenix filed a 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction, or alternatively, a 12(b)(6) Motion to Dismiss Phoenix for failure to state a claim.[6]

---

[1] R. Doc. 24; R. Doc. 14. The Court notes that defendants incorporated the arguments set forth in their first Motion to Dismiss (R. Doc. 14) and will refer to both as "R. Doc. 24," unless otherwise indicated.
[2] R. Doc. 18; *see also* R. Doc. 21, "Amended Memorandum in Opposition"; R. Doc. 26.
[3] R. Doc. 27; R. Doc. 22.
[4] R. Doc. 1.
[5] R. Doc. 5.
[6] R. Doc. 14. Defendants were granted an extension of time to file their answer; their pleading was timely.

Before opposing the defendants' Motion to Dismiss, Plaintiff filed a second amended complaint ("Second Amended Complaint") on July 31, 2024.[7] Notably, Plaintiff's Second Amended Complaint omitted Phoenix and named a new defendant, ALB Ventures, LLC, in its place.[8] Therefore, the Court will consider the defendants to the suit to be Huck and ALB Ventures, LLC, (collectively, "Defendants"). Plaintiff's Second Amended Complaint also asserted a new, third claim against Defendants for negligent infliction of emotional distress ("NIED").[9]

Defendants filed a second 12(b)(1) Motion to Dismiss to address Plaintiff's Second Amended Complaint, reurging the same issues presented in their first motion.[10] Accordingly, the Court will now consider Defendants' Motion to Dismiss Plaintiff's action.

**b. Factual Background**

Plaintiff, a resident of Texas, owned FNG Trendsetters Booking, LLC, ("FNG Booking") and worked as a promoter, manager, and booking agent in the entertainment industry.[11] Defendant Huck, a resident of Louisiana, was the managing member and registered agent for ALB Ventures, LLC ("ALB Ventures"), a Louisiana entity which operated Phoenix, a nightclub located in Shreveport, Louisiana.[12]

Plaintiff secured a contract with Huck to have his client, Ricky Hampton, perform a late-night concert at Phoenix on December 15, 2023.[13] Plaintiff and Huck negotiated a contract which ultimately contemplated the combination of a down payment and shared revenue from the nightclub's ticket sales.[14] Plaintiff's client performed as agreed, and Plaintiff met Huck in his

---

[7] R. Doc. 16.
[8] *See* R. Doc. 16.
[9] R. Doc. 16, p.8.
[10] R. Doc. 24; *see also* R. Doc. 14. Defendants also ask the Court to issue an Order dismissing Club Phoenix 2.0 from the suit out of an abundance of caution, to the extent that they are a party to Plaintiff's Second Amended Complaint.
[11] R. Doc. 16, ¶ 1; ¶ 11.
[12] R. Doc. 16, ¶ 9.
[13] R. Doc. 16, p.3.
[14] R. Doc. 16, ¶ 19.

office afterwards – at about 4:00 a.m. – to discuss payment.[15] This is where the actions giving rise to Plaintiff's claim begin.

Plaintiff and Huck disagreed about how to allocate revenue among themselves and Plaintiff's client. Plaintiff alleges that, after demanding payment for his client, Huck stood up from his desk and removed a 9-millimeter ("9mm") handgun from his holster, cocked it, pointed it at Plaintiff's face, and threatened to kill him.[16] Plaintiff stood up with his hands raised and began to walk backwards, pleading with Huck not to shoot him.[17] Huck followed Plaintiff with the 9mm handgun as Plaintiff walked backwards to the exit door. From there, Phoenix security escorted him to the elevator.[18] Plaintiff also claims that Huck grabbed an AR-15 from behind the first-floor bar and further threatened him as he left the building.[19] After leaving Phoenix, Plaintiff called the Shreveport Police Department ("SPD") to report the incident.[20]

SPD arrived at about 4:30 a.m. Huck admitted to the officers that he had a firearm during his encounter with Plaintiff, but claimed that he never removed the gun from its holster.[21] Huck told SPD officers that Plaintiff attempted to rob him with a firearm.[22] Huck was arrested by SPD and charged with aggravated assault with a firearm, but the Caddo Parish District Attorney did not pursue criminal charges against him.[23] Plaintiff alleges that Huck "repeatedly lied" to SPD officers when he said that Plaintiff attempted to rob him, and that he "published defamatory statements"

---

[15] R. Doc. 16, ¶ 19.
[16] R. Doc. 26, ¶ 21.
[17] R. Doc. 26, ¶ 21.
[18] R. Doc. 16, ¶ 21.
[19] R. Doc. 16, ¶ 23.
[20] R. Doc. 16, ¶ 24.
[21] R. Doc. 16, ¶ 29.
[22] R. Doc. 16, ¶ 35. SPD's investigation yielded no evidence that Plaintiff was armed or attempted to rob Huck.
[23] R. Doc. 16, ¶ 38; ¶ 41.

when various media outlets relayed that Huck "felt that he was being robbed" and "pulled the gun to defend himself."[24]

Plaintiff asserts three claims against Defendants. First, Plaintiff asserts a defamation claim, alleging that Huck's statements to the SPD officers, which were published in various media outlets, constitute defamation *per se*.[25] Next, Plaintiff asserts IIED and NIED claims against Huck for threatening him with death while pointing a loaded 9mm handgun at him.[26]

Plaintiff alleges that he suffered personal and professional harm because of Huck's statements.[27] Plaintiff also alleges that he left the entertainment business and suffered economic losses because of Huck's violent actions.[28] Plaintiff seeks an award of $10,000,000 in compensatory damages.[29]

Plaintiff filed suit in this Court pursuant to 28 U.S.C. § 1332, alleging that there is diversity of citizenship between the parties and that the amount in controversy exceeds $75,000.00.[30] It is undisputed that complete diversity exists in the present case, however, Defendants' instant Motion to Dismiss asserts that this Court lacks subject matter jurisdiction over Plaintiff's action because the amount in controversy does not exceed $75,000.[31] Specifically, Defendants contend that Plaintiff's alleged damages are conclusory, vague, are unsupported by his factual allegations.[32]

Plaintiff opposes the motion and asserts that the allegations in his Second Amended Complaint are sufficient for the Court to conclude that his claims exceed $75,000, particularly

---

[24] R. Doc. 16, p.6; *see also* sources cited in R. Doc. 16, p.6, fn.3.
[25] R. Doc. 16, ¶ 45.
[26] R. Doc. 16, p.8.
[27] R. Doc. 16, ¶¶ 46-48.
[28] R. Doc. 16, p.7.
[29] R. Doc. 16, p.9
[30] R. Doc. 16, p.2; *see also* 28 U.S.C. § 1332; *see also Celestine v. TransWood, Inc.*, 467 Fed.Appx. 317, 319 (5th Cir. 2012) (*citing In re 1994 Exxon Chemical Fire,* 558 F.3d 378, 387 (5th Cir.2009)).
[31] R. Doc. 14-1, p.3; *see also* R. Doc. 24, p.3.
[32] R. Doc. 24, p.2; *see also* R. Doc. 14-1, p.3-6.

considering the dangerous and serious nature of Huck's alleged conduct.[33] Essentially, Plaintiff asserts that the damage he sustained from the incident speaks for itself, and thus it is self-evident that his damages exceed the jurisdictional threshold.[34]

## II. LAW

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by the Constitution and statute."[35] A federal court has subject matter jurisdiction under 28 U.S.C. § 1332 when: (1) there is diversity of citizenship between the parties, and (2) the amount in controversy exceeds $75,000.00.[36] A party may challenge a federal court's subject matter jurisdiction with a 12(b)(1) motion to dismiss.[37] "Under Rule 12(b)(1), the party invoking diversity jurisdiction must show by a preponderance of the evidence that the amount in controversy requirement is met."[38]

Typically, a plaintiff's allegation that the amount in controversy is met "is sufficient to invoke diversity jurisdiction" as "[i]t has long been recognized that unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith."[39] However, "bare allegations of jurisdictional facts have been held insufficient to invest a federal court with jurisdiction."[40] The district court must first examine the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount.[41] If the amount in

---

[33] R. Doc. 21, p.3-4; *see also* R. Doc. 26, p.3.
[34] R. Doc. 26, p.3.
[35] *Mayer Electric Supply Company, Inc. v. Chester Electric, LLC*, 2021 WL 5998527 (E.D.La. 2021) (*citing Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted)).
[36] 28 U.S.C. § 1332; *see Celestine*, 467 Fed.Appx. 317, 319 (5th Cir.2012).
[37] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001); *see also Celestine,* 467 Fed.Appx. 317, 318 (5th Cir. 2012) ("A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case.").
[38] *Turner v. HomeFirst Agency, Inc.,* 2024 WL 3152251, *1 (M.D. La. 2024) (citing *Brand Servs., L.L.C. v. Irex Corp.,* 909 F.3d 151, 155 (5th Cir. 2018).
[39] *Mayer Electric Supply Company, Inc. v. Chester Electric, LLC*, 2021 WL 5998527, *2 (E.D. La. Dec. 2021).
[40] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir.1998).
[41] *Id.*

controversy is not apparent, the court may rely on "summary judgment-type" evidence to ascertain the amount in controversy.[42] In this analysis, the Fifth Circuit has considered "evidence of comparable cases and verdicts as a factor tending to show that the amount in controversy is met."[43] "Once sufficient evidence is produced to establish that the amount in controversy likely exceeds $75,000, the Court may not decline to exercise federal diversity jurisdiction unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount."[44] "The legal certainty concept appears equivalent to a conclusion that as a matter of law the jurisdictional amount cannot be recovered, or stated differently, no reasonable jury could award that amount."[45]

## III. ANALYSIS

Defendants move to dismiss Plaintiff's action on grounds that he failed to allege facts that support the amount in controversy necessary to invoke diversity jurisdiction.[46] Defendants assert that Plaintiff's alleged damages are broad and conclusory and, in turn, Plaintiff cannot demonstrate damages that exceed the requisite jurisdictional amount.[47] Defendants also assert that Plaintiff's request for $10,000,000 is not made in good faith given Plaintiff's vague and nondescript alleged damages.[48]

Defendants have challenged this Court's subject matter jurisdiction through their 12(b)(1) motion to dismiss.[49] Therefore, the burden falls to Plaintiff to demonstrate, through competent proof, that "it is more likely than not" that the value of his claim exceeds $75,000.[50]

---

[42] *Id.*
[43] *Daigle v. Borden Chemical, Inc.*, 2003 WL 22671726, at *2 (E.D. La. Nov. 7, 2003) (*citing DeAguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993)*; Marcel v. Pool Co.,* 5 F.3d 81, 83 (5th Cir.1993)).
[44] *Turner v. HomeFirst Agency, Inc.,* 2024 WL 3152251, *1 (M.D. La. 2024) (cleaned up).
[45] 14B Federal Practice and Procedure §3702 (5th ed.).
[46] R. Doc. 14 (incorporated by R. Doc. 24)
[47] R. Doc. 24; *see also* R. Doc. 14.
[48] R. Doc. 14-1, p.3 (incorporated by R. Doc. 24).
[49] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).
[50] *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir.2009); *see also Allstate Fire and Casualty Insurance Company v. Love*, 71 F.4th 348, 351-52 (5th Cir.2023) ("[a]s the party invoking federal jurisdiction, Allstate

Plaintiff asserts that the $10,000,000 demand is not the monetary figure that the Court should consider in its assessment of the amount in controversy.[51] Instead, Plaintiff contends, the Court should consider all of Plaintiff's factual allegations and, in particular, his allegation that "the amount in controversy exceeds $75,000."[52]

Plaintiff relies on *Luckett v. Delta Airlines, Inc.* to support his position.[53] The plaintiff in *Luckett* was a passenger on a Delta flight who alleged that the airline's loss of her luggage, which contained her heart medication, caused her heart failure.[54] The plaintiff's complaint alleged damages for "property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization."[55] The defendant removed the case from state court on the basis of diversity jurisdiction, which the plaintiff opposed on the grounds that her alleged damages did not exceed $75,000 on their face.[56] The district court found that it was facially apparent that plaintiff's claims exceeded $75,000 and determined that it had proper subject matter jurisdiction to hear the suit.[57]

In light of *Luckett*'s holding, Plaintiff asserts that his alleged damages, referenced below, are sufficient to demonstrate that his claims exceed $75,000.[58]

> 45. "[Defendants] tended to (and did) damage Plaintiff in his trade, occupation, and/or business and they did so with malice and knowledge of their falsity.
> 46. Plaintiff has suffered harm as a direct result of Huck's false and defamatory statements.

---

bears the burden of establishing the amount in controversy by a preponderance of the evidence."); *see also Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir.1995) ("The test is whether it is more likely than not that the amount of the claim will exceed [the jurisdictional amount].").
[51] Plaintiff does not concede that the $10,000,000 demand was made in bad faith.
[52] R. Doc. 16, ¶ 4.
[53] R. Doc. 26, p.3-4; *see also Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir.1999).
[54] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 296 (5th Cir.1999).
[55] *Luckett*, 171 F.3d 295, 298.
[56] *Id.*
[57] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir.1999). It was undisputed in *Luckett*, like this case, that the parties were diverse in citizenship. Therefore, the district court sought to resolve the jurisdictional amount in controversy issue, as it relates to 28 U.S.C. § 1332 subject matter jurisdiction.
[58] R. Doc. 26, p.2.

47. Plaintiff has suffered professional harm as a direct result of Huck's defamatory statements.
48. Plaintiff suffered emotional harm as a direct result of Huck's defamatory statements.
49. Plaintiff has left the entertainment industry and suffered significant economic loss (*sic*) as a result of Huck's violent attack.
50. Huck has with malice injured the reputation on which Plaintiff makes his livelihood, as a Project Manager and promoter, manager, and booker."[59]

Plaintiff asserts that he alleged damages – with a "specificity" comparable to those in *Luckett* – in the form of professional, emotional, and personal harm, and that he incurred significant economic losses from being forced to leave the entertainment business.[60] Accordingly, Plaintiff asserts that the value of his claims "far exceed" the jurisdictional threshold necessary to move forward in litigation.[61]

Put bluntly, Plaintiff's alleged damages are not as specific as those set forward in *Luckett.* In *Luckett*, the plaintiff's complaint included itemized damages that were rich in detail; it included particular expenses such as "a six-day stay in the hospital" and "an emergency ambulance trip" which the court could generally evaluate and calculate.[62] Plaintiff's alleged damages in this case are broad and do not afford the Court with the same ability.

Additionally, Plaintiff's Second Amended Complaint does not provide the Court with sufficient facts to support his assertion that his damages exceed $75,000. Plaintiff does not offer facts regarding his economic position before Huck's statements, nor does he provide any allegations as to how Huck's statements impacted his economic position. Without more, Plaintiff's

[59] R. Doc. 16, ¶¶ 45-50.
[60] R. Doc. 26, p.3. The Court also notes that *Luckett*, unlike this case, originated in state court and was removed to federal court.
[61] R. Doc. 26, p.2.
[62] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir.1999).

alleged economic damages are conclusory, and the Court cannot infer from the face of the Complaint any amount that may constitute "significant economic loss[es]."[63]

Plaintiff's opposition also asks the Court to consider the "seriousness" of his factual allegations as evidence that he sustained significant damages, and reiterates details of the alleged incident to highlight the extraordinarily distressing nature of Huck's alleged conduct. Notably, Plaintiff emphasizes that he "begg[ed] for his life" while Huck held him at gunpoint and threatened him with murder.[64] Plaintiff adds that he immediately called SPD, who investigated the scene upon their arrival and gathered sufficient evidence, based on details provided by Plaintiff, to arrest Huck thereafter.[65]

Again, Plaintiff does not allege any facts regarding *the nature of his distress* as a result of Huck's actions. Plaintiff does not allege that he suffered mental anguish, distress, depression, or any other harm commonly associated with an IIED or NIED claim. While Plaintiff certainly illustrates a dire and traumatic situation, the Court has no insight into the extent of Plaintiff's distress. The Court notes that Plaintiff's alleged damages appear to flow disproportionately from Huck's "defamatory statements" rather than his "violent attack" described at length by Plaintiff.[66]

Accordingly, the Court concludes that it is not facially apparent from Plaintiff's Second Amended Complaint that the jurisdictional amount is satisfied. Therefore, the Court turns to "summary judgment type evidence" – including "comparable cases" – to determine whether the requisite jurisdictional amount exists.[67]

---

[63] R. Doc. 16, ¶49.
[64] R. Doc. 21, p.1-2.
[65] R. Doc. 21, p.1-2.
[66] R. Doc. 16, ¶¶ 45-50.
[67] *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *see also Daigle v. Borden Chemical, Inc.*, 2003 WL 22671726, at *2 (E.D.La. Nov. 7, 2003)*; Marcel v. Pool Co.,* 5 F.3d 81, 83 (5th Cir.1993)).

The posture of this case resembles that of *Hanson v. Thorpe*.[68] The plaintiff in *Hanson* filed suit in federal court pursuant to diversity jurisdiction asserting claims against the defendant for IIED and assault with a deadly weapon following a road rage incident on Interstate-10.[69] In *Hanson*, the defendant became violent after plaintiff drove around him in traffic.[70] The defendant "verbally accosted" the plaintiff and their dispute escalated when defendant drew a firearm and fired two shots into the plaintiff's vehicle.[71] After the plaintiff tailed the defendant to identify the vehicle for the police, the defendant exited his vehicle and approached the plaintiff with his firearm drawn.[72] The defendant threatened to kill Plaintiff and took his cell phone.[73]

The defendant moved to dismiss the plaintiff's claims on grounds that the plaintiff failed to establish the requisite amount in controversy.[74] The plaintiff opposed the motion and asserted several itemized damages to prove the extent of his damages.[75] Namely, the plaintiff submitted medical records and noted specific values for lost wages, medication expenses, vehicle damage, and treatment costs for insomnia, post-traumatic stress disorder, and depression.[76] The Court held that it was not facially apparent from the plaintiff's complaint that the amount in controversy exceeded $75,000, but ultimately denied the defendant's motion to dismiss because a reasonable jury, given proof of the plaintiff's alleged damages, could "conceivably award [the plaintiff] more than $75,000."[77]

---

[68] *Hanson v. Thorpe*, 2020 WL 4540847, at *1 (E.D.La. Sept. 6, 2020).
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Hanson*, 2020 WL 4540847, at *1-2 (E.D.La. Sept. 6, 2020).
[75] *Hanson,* 2020 WL 4540847, at *2 (E.D.La. Sept. 6, 2020).
[76] *Hanson*, 2020 WL 4540847, at *2-3 (E.D.La. Sept. 6, 2020).
[77] *Hanson*, 2020 WL 4540847, at *5 (E.D.La. Sept. 6, 2020).

Here, Plaintiff's opposition does not contain any of the itemized damages found in *Hanson*. Plaintiff does not offer any valuations for treatment or expenses – nor does Plaintiff allege that he was treated for anything at all – and he does not offer any "summary judgment type" evidence to support his claim that he suffered professionally, as explained above.[78] Moreover, Plaintiff's allegations in the present case appear to be less egregious than those in *Hanson*; Plaintiff does not allege that Huck fired at him and does not allege any actual injuries to his person or property.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff fails to establish by a preponderance of the evidence that his claims meet the jurisdictional threshold amount of $75,000. Therefore, Defendants' Motion to Dismiss will be granted. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (R. Docs. 14 and 24) is **GRANTED** and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers this 11th day of July, 2025.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**

[78] The Court "will not speculate on arguments that have not been advanced or attempt to develop arguments on a party's behalf." *Turner v. HomeFirst Agency, Inc.,* 2024 WL 3152251, *2 (M.D. La. 2024).